up to the seat for 15 minutes for five. Mr. Morgan, for the appellant. Good morning, your honors. My name is Sam Morgan. I am, and may it please the court, my name is Sam Morgan. I represent the appellant in this case who is also the plaintiff, Raymond Carey. The calendar describes this case as an appeal of a summary judgment motion in the defendant's favor in an employment discrimination action that alleges discrimination in compensation based on gender, race, and age. And at the heart of this case is a compensation process that's been utilized by the defendant, Foley and Lardner Law Firm, which is purposely opaque in arbitration in its process where there are no... Isn't it pretty similar to what most law firms do in terms of the factors? I mean, I think you could call it opaque. Arbitrary may be stepping over the line a little bit, but I most law firms use in dealing with the highly contentious issue of what partners are paid? Well, I've worked in three different law firms. I've worked under three different, significantly different economic systems where compensation is determined on very different means, and all of them were different than the compensation process that's described by the defendant, Foley and Lardner. In most law firms... Aren't these the considerations they used, similar considerations other firms use? Similar... Leverage. How much business do you generate? How much work do you do on the administrative side within the firm? How much do you bring along young associates and young partners? Yes. In most firms, there is a way of measuring the effort that's expended by the lawyer in the amount of time, the quality of time, and the results that are achieved through the investment of that time in the activities that you just mentioned. For example, in some law firms that focus more on what your book of business is and what you as a lawyer or a partner generate in fees by way of your own time that's recorded and collected. A firm may, and I've worked at a firm, if you ask what most law firms do, a firm may have a percentage. You have a column of what your time that's been billed and collected has generated in revenue for the law firm, and you get a percentage of that goes towards your compensation. You have a column of what you generate in terms of origination fees, the other part of your book of business that other lawyers in the law firm that you push to them that you don't work on but they do generates, and the firm will establish an objective percentage of what amount of those revenues go to you. And then each other activity, whether it's mentoring associates or if it's participating in a leadership position with or in participating in an outside activity with a bar association as a president, as Mr. Carey did for two years with the Detroit Metropolitan Bar Association where he was their president, that the compensation system will have some objective criteria of measuring the effectiveness, the amount of time, the type of time that's spent. If a position with the firm, whether it's a leadership position, is merely administrative and performing ministerial responsibilities of carrying out directives that are set forth by the firm's management committee and is not really acting as a managing partner would be. But doesn't the firm get to decide how they're going to reward? And absolutely, the firm does get to decide. But once it makes those decisions, the decisions are subject to review based on whether or not it rewards men and women, minorities and non-minorities, older and younger, on a uniform basis. If they apply the same criteria across the board. Who are your competitors that you're saying, your comparators, I mean, that would show that you've met your prima facie case for any one of your claims of equal pay? On the Equal Pay Act, we cited, we were limited in the amount of discovery that we were able to get in terms of comparing the different offices. This law firm has 12 or 14 offices across the country. We were given the opportunity to examine the partners in the office in Detroit where Mr. Carey works and four other offices, one in Florida, one in Madison, Wisconsin, one in Los Angeles. And we had, we identified 10 female comparators. Three of which were in the Detroit office. And two of which make, really make a very compelling case for creating at least a genuine issue of material fact and whether or not Mr. Carey was being treated differently. And the names of those two are? The names of those two are Judy O'Neill and Ann Marie Utz. Now I thought that Utz, for instance, had a managerial role that was significant. Am I wrong on that? Ms. Utz was elevated to a department chair role and a practice group assistant chair role. And that happened as a result of the firm's practice, its published practice, of giving preference to women and minorities for advancement to those types of positions within the firm. The I don't think there's anything wrong by any means with the firm maintaining an objective or thriving to advance the careers and the representation of women and minorities in their leadership positions. However, the law is clear that a firm cannot, no employer can do that at the expense of in Mr. Carey's case. Ms. Utz, as Mr. Carey has testified in his deposition testimony and his affidavit testimony constitute evidence in the case that should be considered by the trial court when assessing whether or not there's evidence to create a genuine issue of material fact. Ms. Utz does not have any background or specific experience in the area of bankruptcy where, for example, she had before she had elevated to that position of leadership, she had never represented a major corporation in a bankruptcy proceeding either as debtor counsel or creditor counsel. So there's nothing about her background, her experience, her academic achievement or her performance in the role as counsel for the clients that she has represented in her career that distinguishes her in a way that because she was elevated to this position where she carries out ministerial responsibilities that come down from the management committee in Milwaukee, that that activity adds value that exceeds or should be valued more than the performance of Mr. Carey which far exceeds her performance in areas such as financial performance. If you look at the... What do you mean that he exceeds her in the area of financial performance? Do you mean he brings in more billings? Is that... Yes. In each of the years, and Mr. Carey has done an analysis of the financial records and the compensation, the productivity and compensation records that were produced by the defendant during the law firm tracks billable hours that are recorded, non-billable hours that are recorded, so then you have your total hours recorded. Then it tracks the collections from clients where the attorney's time is billed and it tracks the financial performance, or this is the book of business, that the lawyer has when they're the principal billing partner on a client where the work for that client is performed by other attorneys in the firm. I think it's clear that these statutes mostly apply to employees is the term. I take it it's clear that that covers partners and partnerships? Because it's not 100% obvious. You imagine a two-person partnership. What are they going to do, sue each other over the compensation? I mean, does it apply to partnerships? There was an issue in this case that the trial judge did not decide because Judge O'Meara decided to go with the proposition of the defendants when filing their motion to just assume arguendo. But I take it there are some cases that support the idea that you can treat partners as employees? Yes. It's the clackamous line of authority. There's a numbered Sidley Austin case. Was that an Equal Pay Act or was that a Title VII? What was the... And your red light is on. So your time has expired. Thank you. May it please the Court, my name is Charles DeWitt and I represent the defendant Foley Lardner in this action. Judge Sutton, I'd like to respond to the question that you raised at the outset about isn't this what most firms use? I would refine that a little bit more and say I think this is what most large, full-service law firms use. And I say that because Mr. Morgan said that he worked at three different firms. One of the firms that he worked at was Summer Schwartz. I was actually involved in another dispute with a partner with Summer Schwartz, so I'm familiar with their system. And I would say that that system at Summer Schwartz, for example, one of the firms that Mr. Morgan worked at, was primarily a plaintiff's law firm. And I think in the plaintiff's law firms that you do find some difference from what you find here. There are all sorts of strains and variations. I've worked at Littler Mendelson, I've worked at Dyke & McGosset, I had my own firm. I think the biggest difference is that the bigger the firm, the more you have to account for administration. I would say that's one of the differences between that and the smaller firm. But yes, that is one of the factors. And that administration accounting takes all shapes and forms because you have roles, for example, where in Foley you can be a practice head, you can be a department head, you can be an office managing partner. They're different roles. You can serve on, as Judy O'Neill did, vice chair of the bankruptcy group. There are lots of different strains of those things. But isn't one of the real problems here for a person in a plaintiff's shoes that the firm can say, oh, we're rewarding Judy because she's the manager, but it really could be a mask for discrimination. In other words, because you just sort of throw all these balls up in the air and then say, well, Judy gets this much, but John only gets that much, or vice versa. And then the partner or employee, another issue, has to respond. I would say in the abstract, that's true. That it is, depending on the situation, and that's why I think the EPA says, and you've written this in the Beck case and others, is you have to look at it on a case-by-case basis. So I asked your opponent for who were his best comparators to show that he was discriminated against, and he came up with, I think it's Judy O'Neill and Ann Marie. I can't pronounce her name. So how would you respond to his saying that those two women show that he was discriminated on the basis of sex or that he was denied equal pay, and he's obviously got racial claims as well? Well, I think there's two responses I can give you. One deals with the prima facie case, and one deals with a reason other than sex for their compensation. I'd like to start with the first part, as to say why these two people are not substantially equal. And it goes back to, I would say, you know, in the days of Abraham Lincoln, when we were all lawyers and everybody did everything, is different from the way it is today. Everything is highly specialized. And I tried to find out from Ray Carey, because I knew that he was going to point to Judy and Ann Marie from other discovery. So I asked him, who, in your opinion, Mr. Carey, are your comparators? The first response that I got was, nobody in the firm does what I do. Nobody is similar to me, because what I do is labor and employment litigation, and I do traditional employment work. I do collective bargaining type work. Nobody does that in the firm, so nobody is like me. So I said, so you don't have anybody that does substantially equal work. The light bulb went on, and he said, reverse field, and said, no, no, no, everybody is substantially equal, because we're all lawyers and we're all partners. And so then I started comparing other people, and then he finally drilled down to Judy, Ann Marie, and others. And I would say that Judy and Ann Marie don't meet the prima facie case, because if you look at their skills, their duties, their responsibilities, they're not all fungible. Judy can't do what Ray does. Ray can't do what Judy does. But then you're saying that no one, no plaintiff can win an employment discrimination case against a big law firm, because the big law firm can say each partner is unique. No, I don't think that's accurate. Let's say you have the big law firm, and let's take this particular case, and let's say you had the one person that he points to that was in his section, doing this similar type of work to him, but not identical, and I know it doesn't have to be identical, but you have to have substantial similarity. That would be John Birmingham. If John Birmingham was named Jane Birmingham, if John was a Jane, then I think that would be a much more appropriate type of comparator to use. I'm sorry, I don't remember any of the details on John Birmingham. Was he being paid the same amount? Well, that's interesting, because John, at points, was paid more than Kerry, and at other points he was paid less than Kerry. And it depended upon the aggregation of the 13 factors that Mr. Jaspin lists in his affidavit. And you can kind of piece through them, because sometimes John has better financial performance than Ray, and at other times John has more administrative responsibilities for Ray. Sometimes those mean John got more money. Sometimes it meant Ray got more money. So you can't just – I think what you're saying is, could the plaintiff never prove a case? I think the plaintiff can prove a case, and I think it depends on how the person is similarly situated. In the case that you had where you dissented, the Kahn case. You're not just saying you need better comparators. These comparators aren't very good. That's what you need. You need better comparators. You have to have better comparators, or else you're not going to make a prima facie case. It may be that no comparator exists for your case. It may be that there's no female comparator for you. So it falls by the wayside. You have to have somebody to compare yourself to on the basis of gender, or else the schematic just simply falls apart. So O'Neill and Utz are different. You're saying they're not similar enough to be comparators because why? Because they had these managerial roles? Well, I would say from the very starting point that they are not proper comparators because they do not do substantially the same thing, and therefore they do not have the same responsibilities. Meaning when they don't do substantially the same thing, you mean because they don't do traditional labor law work, or do you mean something else? They do bankruptcy. Bankruptcy at one point may be viewed by the firm as being more valuable than litigation. So both of them are in bankruptcy. Both of them are in bankruptcy, and it's important. Okay, so are you saying then that in order for Cary to have a comparator, he has to find somebody who's doing labor law, who's of a different race or a different sex? I would say yes. That's where you start because it depends on who you're talking to. And you also said firms are really specialized. Lawyers are really specialized now. So you're basically saying it's going to be virtually impossible for somebody in a firm to find a comparator, and even if that person is in fact being discriminated against, they are not going to be able to find a comparator and not going to be able to make a prima facie case. I wouldn't go quite that far. It sort of depends on a case-by-case basis what firm you're talking about, what kind of specialties and subspecialties they have, and you have to then go to the demographics and say, if we're talking about the equal pay claim, it has to be a female. He has to identify a female that's substantially equivalent to him. If we pass the issue of substantially similar and go to reason other than sex, and you look at Judy O'Neill, Judy O'Neill's financial numbers alone were double what Ray Cary's numbers were. That's set forth in paragraph 20 of Jaspin's affidavit. And if you look at Utes and go to that point, Utes was paid less in two of the three years that Cary is complaining about, and in the third year her numbers are way better than his, plus we go back to O'Neill, she was the vice chair of the group, and we go back to Utes and she had office managing partner duties. So he tries to present the picture, for example, on Utes, that Utes was paid more than him all the time. That's not even true. The fact of the matter is she was paid less than him in two of the three years in question. But I want to get back to your point because I think it's important. It's an important point, and I read through all of your opinions. Given what you just said, it doesn't sound like this point needs to be resolved in this case. I don't think it does. I think in this case, I think O'Meara got it right, right from the get-go. If you read through his opinion, I've read it many, many times, I think he got it exactly right. And he points to the comparison. He says, you, Mr. Cary, have the burden of establishing a prima facie case. That's correct. How do you do that? You show me a person of the opposite sex that is doing what you say is substantially equal in terms of skills, duties, responsibilities, working conditions, and the like. He says, you have not done that for me. Why have you not done that? You've given me the names of these people, but you've not shown that they're substantially equal to what you do. And what you've given me to make the comparison is data from the website of the firm. And when I look at that data, and he quotes it in his opinion, it shows that they do two radically different things. So that's why he says, I don't think you've satisfied your burden to show me that they're the same. What Judge Sutton is suggesting as a possibility to you is that if you want to say that the firm compensates on the basis of the financials. That's one fact. You have asserted to us that O'Neill and Oots did the same, if not better, than Cary did on the financials in those years. So on that basis alone, if O'Neill is doing better on financials, and if that's a significant factor that the firm uses to determine compensation, then it would show that, in fact, there was a basis for their being paid more. Correct. That would be other than sex. You would say, assuming without deciding that he has satisfied a prima facie case, there are on the record legitimate reasons that show other than sex justify the compensation decisions. So there's two different schematics that you can go. One is assuming but not deciding and going to the other than sex. The other one is to say that no, they're not on this record, on this particular record, they're not the same. But you can see the problem if you divide up lawyers into such fine groups as subspecialties in particular areas and say, well, labor law is different than bankruptcy, you're rapidly going to come up with the impossibility of any plaintiff who's actually a deserving plaintiff showing that they were discriminated against in some fashion. Well, that has already been done, I would say. And I can give you a couple different examples. One was the case in which you had Resnick. Resnick is cited in the briefs. In the Resnick case, there were two surgeons that operated out of the same hospital. They said, we're both surgeons, we're both operating out of the same hospital. The hospital said, no, that's not the end of the analysis. You have two different specialties. One was a hand surgeon. The other one was a sports medicine surgeon. And they go through and they say, you have to show that you're substantially equal. They couldn't do that. They didn't meet the prima facie case. And Resnick is an unpublished Fifth Circuit case, right? That is correct. I don't know why you're fighting this so hard. It seems to me incredibly obvious that if you have two sections of a big law firm. I know this may not be true in this case, but let's call it bankruptcy and labor and employment. Both sections generate roughly the same amount of revenue for the firm. You have a head of each one of them. They both share administrative responsibilities. They both also generate a lot of business. It just doesn't make any sense to say they can't be comparators. Of course they can be comparators, even though they are in different legal practices. Well, under those facts, I would agree. Under those facts, I would agree that you could make that comparison. If you lined everything up and using the factors that Jasmine recites, those factors were all the same regardless of what section you were in. Then I think you can make that argument. Okay. But that's not what we have here. We have something radically different here. I would cite the case that Judge Alarcon had with Stanley, which is a published case, which was the George Raveling basketball case. If you could give us the name of that case. Stanley v. University of Southern California. There are actually two opinions. One is at 13-Fed-3rd, 13-13, and the other one is at 178-Fed-3rd, 1069. Your red light is on, so we will look at those cases. Thank you. Thank you for giving us those sites. I'd like to just touch on two points with respect to what Mr. DeWitt has insisted is the situation that Mr. Carey cannot be compared with Ms. O'Neill and Ms. Utz because he's a labor and employment lawyer, and their bankruptcy attorneys and their practices are not comparable. Mr. DeWitt has consistently made this argument, tried to push this argument on Mr. Carey during his deposition, and he in fact sold Judge O'Meara that he should accept that they're not comparable. But all of that ignores Mr. Jaspin's testimony that he gave in his deposition, which he then contradicted a bit in his declaration that was relied upon in the summary judgment motion and even more in the supplemental declaration that Mr. Jaspin provided. And Mr. Jaspin's testimony was that the firm does not make a distinction or compensation purposes between partner-level lawyers based on their area of expertise, the specialty, the type of practice, whether it's a litigation. But they do make distinctions based on O'Neill collecting twice as much for the firm as a principal billing partner, Utz exceeding Carey in every financial category. Those are really problematic. And the facts demonstrate that that's not true. It's not true that Judy O'Neill every year exceeded Mr. Carey in every financial, every category that's of a financial import. There was one area. How about the years for which you're seeking a comparison? Yeah, there's one area where she exceeded him financially, and that was in the amount of business that she was the principal billing partner, the originator that other people worked on, her book of business. Is it true they collected twice as much for the firm as a principal billing partner? One year. One year, Mr. Carey was at $1.5 million and change, and she was at $1.9 million and change. Each year, he billed significantly hundreds of additional hours, billable hours, that were collected more than she did. In fact, he generated from his hours that were billed and collected by the firm, each year his exceeded hers. And each year... What should he have been paid each year that you think there was a problem? Pardon? How much more should he have been paid in each year? Give us the total amount, whether it's $500,000 or it should have been $50,000 more each year. I'm curious what the amount is. Well, he should have, and Mr. Carey has gone through this analysis. He should have been paid as much or around as much as Ms. O'Neill was paid. Give me the number. What's the number? $300,000 to $400,000 more a year. She was paid... Should have been paid $300,000 to $400,000 more each year? Well, in 2008, the 2007-2008, for example... So what does that get you, $700,000 to $800,000? For three years? No, each year. Would it have been a total amount of $700,000 to $800,000 each year he would have made? Yes. If you analyze the criteria or the factors that they analyze relative to financial performance, and that includes the amount of personal hours billed that were collected, how that figures out to a gross profit when you figure in an overhead concept, and then you look at what the origination, the book of business factor provides. Mr. Carey worked more hours, billed more hours. His time resulted in more revenue generated for the firm and more profit for the firm. And that outweighed, and that value was higher than Ms. O'Neill's, where Ms. O'Neill's value was higher in the sense that she originated more work that other people worked on. And one can argue that the overhead on that work is much higher than the overhead on Mr. Carey's work. And it was Exhibit L that was attached to Mr. Carey's response to the defendant's motion for summary judgment that he did this analysis and he provided it on a number of different angles of rate per hour and that sort of thing. And your red light is on. Thank you. Thank you very much. Thank you both for your argument.